# James E. Deffenbaugh et al., Plffs. in Err., *v.* Joseph S. P. Harris et al.

A devise of land, without words of limitation, to a married daughter, followed by the words "and I hereby authorize and empower her to sell and dispose of the same as she may think proper, but in case of her death and the property as aforesaid remaining unsold, then it is to be equally divided among her children share and share alike as they arrive at the age of twenty-one," and in the light of other clauses in the will, gives to the daughter a life estate in the land and a power to appoint, by way of sale or otherwise, to other uses than those specified by the will.

A deed of conveyance of the land in fee simple, without the joinder of the husband, is a valid execution of the power.

(Decided October 4, 1886.)

NOTE.—So a married woman may exercise a power of appointment by a will executed during coverture. Drusadow v. Wilde, 63 Pa. 170; Barnes v. Irwin, 2 Dall. 199, 1 L. ed. 348, 1 Am. Dec. 278.

Error to the Common Pleas of Blair County to review a judgment for the plaintiffs in an action of ejectment. Reversed.

At the trial before BUCHER, P. J., the plaintiffs proved that Aaron Burns died in 1842, seised of the land in controversy and leaving the following will:

"First, it is my will, and I do order that all my just debts and funeral expenses be duly paid and satisfied as soon as conveniently can be after my decease.

"Item. I give and bequeath to my daughter Sarah Ann my secretary, two of my best beds and bedding at her choice, and one hundred dollars' worth of household and kitchen furniture, which she may keep at the appraisement if she chooses so to do; also the 4-acre out lot, including the house and garden at the upper end of the town of Williamsburg (house and garden now occupied by David Stephens); and, after she arrives at the age of twenty-one years, do hereby authorize and empower to sell and dispose of the same, or otherwise hold it as she may think proper. I also give and bequeath to my said daughter in addition to the foregoing $2,000 in money, as follows: $500 when she arrives at the age of twenty-one years, $500 one year thereafter, and the balance, $1,000, to be paid one year after the last $500 are paid.

"I give and bequeath to my daughter Mary, intermarried with Jos. S. P. Harris [the land in controversy]; and I do hereby authorize and empower my said daughter Mary to sell and dispose of the same as she may think proper; but in case of her death and the property as aforesaid remaining unsold, then it is to be equally divided amongst her children, share and share alike, as they arrive at the age of twenty-one. I also give and bequeath to my said daughter Mary $2,000 in money, to be paid to her as follows: $1,000 one year after my death, and $1,000 two years after my death; and no voucher or receipt for the payment of the money as aforesaid shall be of any value except her own, unless in case of her death; then the same to be equally divided amongst her lawful heirs as they arrive at the age of twenty-one years. I will and bequeath to my daughter Mary the balance (if any) due me on a final settlement of the debts and

credits of the late firm of A. Patterson & Company after first deducting the balance from me on my private account remaining on the books of said firm.

"Item. I give and bequeath to my daughter Rachael Rebecca, intermarried with Dr. Alex. McKamey, the house I now occupy [and certain other lands] for her entire use and benefit, to sell the same or hold it as she may think proper; and I do hereby authorize and empower my said daughter Rachael Rebecca to sign, seal, execute, and acknowledge all such deed or deeds of conveyance as may be requisite and necessary for the granting and issuing the same to the purchaser or purchasers thereof. I also give and bequeath to my said daughter Rachael Rebecca $3,000 to be paid to her in money, as follows: $500 one year after my decease, $1,000 three years after my decease, and $1,-000 four years after my decease; but in the event of her death the money as aforesaid remaining unpaid to be put out on interest for the use of her lawful heirs, to be paid to them share and share alike, as they arrive at the age of twenty-one years, and the house and lots given and bequeathed to my said daughter Rachael Rebecca as aforesaid, in the event of her death and the same remaining unsold, is to be distributed amongst her lawful heirs, in the same manner and form as the money.

"Item. I will and bequeath to my son Joseph [a certain house and lot], one good bed and bedding and $3,000 in money, to be paid to him as follows: $500 to be paid to him one year after he becomes of age; $500 one year after that, $1,000 when he arrives at the age of twenty-four years, and $1,000 when he arrives at the age of twenty-five years; but in the event of the decease of my said son Joseph without any lawful issue, and the money as aforesaid remaining in part or in whole, or not all due, then and in that case to be divided among my other children then living and my children that may have died and left lawful heirs, share and share alike.

"Item. I give and bequeath to my grandchildren Mary Ann Rhule and Jonathan Albert Rhule, each, $800 in money, to be put out on interest until they arrive at the age of twenty-one years; and in the event of the decease of either of them before they arrive at the age of twenty-one, then and in that case the

survivor is to receive the whole sum of $1,600; but in the event of the decease of both of my aforesaid grandchildren before they arrive at the age of twenty-one, then and in that case the said $1,600 is to fall back to my estate and to be divided amongst my children then living and my children that may have deceased and left lawful heirs, share and share alike.

"It is my will and desire and I hereby order and direct my representatives to sell at public sale three shares I hold in a tract of land in Allegheny township, bought of Jacob and John Kinsel and Jacob Burkett, who is married to one of the heirs of said estate, containing 190 acres, sale to be made in one or two years, as may be thought best and advisable; and I hereby authorize and empower my said representatives to transfer my title to the purchaser and purchasers.

"And as touching all the rest, residue and remainder of my personal estate, which will amount to from $4,000 to $5,000, which is not disposed of, that when all is settled up, the balance or remainder of my estate, I will and bequeath to my children share and share alike, and my two grandchildren Mary Ann and Jonathan Albert Rhule to have what would be coming to their mother if living.

"All the houses, lots, etc., given to any of my children in this my last will and testament, are to be taken charge of by them immediately after my decease, and to receive the income and profits arising out of the same; the said houses and lots are all leased for the present year except the one I now occupy. And whereas, I have made sundry deeds of trust of real estate to my children, which are my lawful acts and deeds, and desire that the same may be carried into full effect as intended so to be by the said deeds of trust for the benefit and interest of each of my children named therein; and if any one of my children are dissatisfied with the said deed of trust or this my last will and testament, and commences a suit at law or occasions any disturbances promoting any suit or suits at law, that child or children, son-in-law or sons-in-law, so misbehaving, to have no part of my estate, and his or their share or shares to be equally divided amongst the rest of my children share and share alike.

"All promissory notes and receipts for money lent or advanced

or for any other purpose, including all accounts which I might have held against any of my children or sons-in-laws, are considered fully settled and discharged, except a balance of rent which Jos. S. P. Harris is to pay after making certain improvements on the farm he now occupies, amounting to $150, due April 1, 1843.

"It is my will and desire that Jos. S. P. Harris and Dr. Alexander McKamey may settle my estate by entering such bail as the orphans' court will require; and if they cannot obtain such bail, then my request is that Adolphus Patterson, Jno. K. Neff, and Jos. S. P. Harris become my administrators; and if said Harris cannot find bail, he is to assist the others, as he knows more than anyone else concerning my business; and the administrators as aforesaid are to allow said Harris for his time and trouble, to be paid out of my estate."

The plaintiffs proved also the death of Mary, wife of Jos. S. P. Harris in 1860, leaving four children, three of whom, with their father, Jos. S. P. Harris, who had acquired the share of the fourth child, now deceased, were the plaintiffs, and rested.

The defendants offered in evidence the deed of Mary Harris, formerly Mary Burns, to James Stevens, dated March 25, 1851, for the land in controversy, to be followed by proof that James Stevens and the defendants claiming under him had been in possession since 1851 under the deed.

Upon the objection of the plaintiffs the court rejected the defendants' offer, upon the ground that the will gave Mary an estate in fee, "with the right to sell, if she saw proper; but that this did not give her power to sell and convey without her husband joining her."

The court directed a verdict for the plaintiffs; whereupon the defendants took this writ.

The assignments of error specified the action of the court in rejecting their evidence and in instructing the jury to find for the plaintiffs.

*Samuel S. Blair,* for plaintiffs in error.—A power has no effect on the limitation over until it is executed. Until then it is as if it had no existence; but if it carries the fee when ex-

ecuted, it will operate as a devestiture. Fearne, Contingent Remainders, 226; Physick's Estate, 2 Brewst. (Pa.) 179.

Whether the limitation proceeds or follows the power makes no difference. Fearne, Contingent Remainders, 227. Sometimes the testator gives in his will a power of disposition and then devises over the estate to take effect if and in case the power shall not be exercised. Limitations of the latter kind are regarded as remainders, and as vested, although liable to be defeated if the appointment shall be made to another. 2 Washb. Real Prop. 536. No inference in this case of an intention to give a fee can be drawn from the devise being general or indefinite, as the act of 1833 provides that "all devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by a devise over, or by words of limitation, or otherwise, in the will, that the testator intended to devise a less estate."

A devise of an estate generally or indefinitely with a power of disposition over it carries the fee; but where the estate is given for life only the devisee takes only an estate for life, though a power of disposition or to appoint the fee by deed or will be annexed. Morris v. Phaler, 1 Watts, 390; 4 Kent Com. 319; Fisher v. Herbell, 7 Watts & S. 63; Second Reformed Presby. Church v. Disbrow, 52 Pa. 223.

A devise for life with a power to dispose of the thing at his death is but an estate for life; and if the devisee or legatee does not dispose of it, it goes (when there is no devise over) to the heir or next of kin of the testator, according to the nature of the property. Flintham's Appeal, 11 Serg. & R. 16.

A *feme covert* may execute any kind of power whether simply collateral, appendant, or in gross; and it is immaterial whether it was given to her when sole or married. The concurrence of the husband is in no case necessary. 4 Kent, Com. 324; Sugden, Powers, 148.

The mode of executing the power of sale given to Mrs. Harris is not specified in the will. It was a power to sell. She did sell and received the purchase money. The power would have been well executed by a parol sale. Silverthorn v. McKinster, 12 Pa. 67.

If the power is required to be executed by deed, nothing less will satisfy the words; and it must be sealed and delivered as a proper deed without reference to the power of the donee to make a proper deed; therefore a married woman must seal and deliver the deed as if she were *sui juris.* 2 Sugden, Powers, 303.

Ordinarily a power of disposal annexed to a fee is merged in the estate; but where a married woman is the devisee in fee and the donee of a disposing power, the power, the execution of which may be necessary to pass her estate, should not be regarded as merged. 2 Sugden, Powers, 107; Abbot v. Burton, 11 Mod. 181; Downes v. Timperon, 4 Russ. Ch. 334.

*Aug. S. Landis,* for defendants in error.—Under the 9th section of the act of April 8, 1833, Mrs. Harris took an estate in fee simple. The act says: "All devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by a devise over or by words of limitation or otherwise in the will, that the testator intended to devise a less estate." The superadded words of the testator, whereby he authorized her to dispose of the land as she thought proper, will in nowise diminish the estate; but emphasizes the full and perfect measure of the estate, as there is no stronger evidence of the absolute dominion over property than the power to sell it in any way or upon any terms preferred by the seller.

The gift of the proceeds of a thing is the gift of the thing itself; and it is the settled law of this state that a devise with the power to sell vests in the devisee an estate in fee simple. Morris v. Phaler, 1 Watts, 389; Culbertson v. Duly, 7 Watts & S. 195; 4 Kent, Com. 319; Caldwell v. Fulton, 31 Pa. 479, 72 Am. Dec. 760; Second Reformed Presby. Church v. Disbrow, 52 Pa. 219.

As there was no life estate, there was no remainder. When the testator directed that in case she died without having sold the land it was to be divided among her children, share and share alike, as they came of age, it was the grant to them of a fee after her fee, by executory devise. Pells v. Brown, Cro. Jac. 590; Hinde v. Lyons, Leon, pt. 2, p. 11; 2 Bl. Com. 173, 174;

Hauer v. Shitz, 3 Yeates, 221; Langley v. Heald, 7 Watts & S. 96; Evans v. Evans, 9 Pa. 192.

A power is technically an authority given to someone to do an act in relation to lands which the owner might himself lawfully perform. It is said to be collateral when conferred upon a stranger without interest; appendant when the person, along with his interest and within its compass, has the power of revocation or appointment; in gross when the life tenant has the power of appointment out of the compass of his estate. Sugden, Powers, 82; 2 Washb. Real Prop. 302–306.

Until the statute of 3d and 4th William IV., a married woman could only convey by the fictitious method of fine and recovery. That act authorized her "to release or extinguish any power vested in or reserved to her in regard to lands of any tenure, as effectually as if she were a *feme sole;* but her husband must concur in the deed, and the deed must be acknowledged as required by the act." 2 Sugden, Vendors, 90.

The only modification of this was in 1874, by the act of 37 and 38 Vict. 78, when she was authorized to execute a deed as a *feme sole* when she was a mere trustee. There are no statutes on this subject in Pennsylvania.

Even if Mrs. Harris had a power to sell, she was not empowered to convey. It is a rule in regard to powers that a strict compliance with the language of the grant is absolutely necessary. What is not there cannot be supplied. 2 Washb. Real Prop. 316.

Here nothing was said as to how she should convey; and with that omitted, the law would supply the usual method, with her husband. In the devise to Rebecca, the testator authorizes her "to sign, seal, execute and acknowledge all such deeds of conveyance as may be requisite and necessary." Whatever that may avail with her, he studiously avoids going so far with Mrs. Harris.

Mrs. Harris had an estate in this land, and unless she conveyed it as the law required, her conveyance was void. The second section of the act of February 24, 1770 (1 Purdon's Digest, p. 460), requires the husband to join in the deed. The act of April 11, 1848, made no change in this respect. Peck v. Ward,

18 Pa. 506; Thorndell v. Morrison, 25 Pa. 326; Glidden v. Strupler, 52 Pa. 400; Ulp v. Campbell, 19 Pa. 361; Richards v. McClelland, 29 Pa. 385; Buchanan v. Hazzard, 95 Pa. 240.

Opinion by Mr. Justice Sterrett:

In 1842 Aaron Burns died seised of the lots in controversy, having first devised the same, *inter alia,* as follows: "I give and bequeath to my daughter Mary, intermarried with Joseph S. P. Harris, the house and lot," etc., describing the property; "and I hereby authorize and empower my said daughter Mary to sell and dispose of the same as she may think proper; but in case of her death and the property as aforesaid remaining unsold, then it is to be equally divided among her children, share and share alike, as they may arrive at the age of twenty-one."

In 1860 the devisee Mrs. Harris died, leaving her husband and four children surviving her. In 1873 this action of ejectment was brought by three of the children and the husband who had acquired the interest of the fourth child then deceased. They contended that the property had not been sold or disposed of by Mrs. Harris in her lifetime; and hence, according to the terms of the will, the title in remainder was vested in her children.

The defendants, on the other hand, claiming under the deed of Mrs. Harris, of March 25, 1851, to Rev. James Stevens, contended that the lots in controversy were conveyed to him in fee for the consideration of $1,400; that this was done in execution of the power of sale contained in the will. In support of this position the deed was offered in evidence, but the court rejected it, because the grantor's husband was not a party thereto; and thereupon a verdict was directed for plaintiffs.

If the deed had been received and full effect given to it as a conveyance, the defendants would have been clearly entitled to a verdict. It will thus be seen that the controlling question presented by the record is whether the deed of March 25, 1851, operated as a conveyance of the lots to Stevens, under whom defendants claim. The solution of that question depends upon the construction given to the devising clause above quoted.

It was contended by plaintiffs in error that Mrs. Harris took merely an estate for life, with power independently of her hus-

band to sell or otherwise dispose of the devised property as she might think proper; and, in the event of her dying without having executed the power of sale, an indefeasible estate in remainder was given to her children; that the deed above mentioned was a good execution of the power, and therefore operated as a conveyance of the title in fee to her vendee, James Stevens.

An examination of the will has satisfied us that the construction thus contended for is correct and in harmony with the general scheme of the testator, as evidenced by other clauses of his will. Construing the devising clause in question according to the plain import of the language employed and in the light of other provisions of the will, we think the testator intended to give Mrs. Harris a life estate in the lots, with remainder in fee to her children, subject, however, to devestiture by the execution of the power of sale given in express terms to the life tenant.

The power thus given to Mrs. Harris by her father is a power to appoint, by way of sale or otherwise, to other uses than those specified in the will; and was, therefore, well executed by herself alone without her husband joining in the deed of conveyance to Stevens. Nothing is better settled than that a *feme covert* may, without the concurrence of her husband, execute any kind of power, whether given to her when single or married. 4 Kent, Com. 324; Sugden, Powers, 148.

To require his concurrence might not only embarrass the depositee of the power in its execution, but in case of his refusal to concur it would prevent its execution altogether and thus defeat the testator's intention. It is obvious from a consideration of the entire will in this case, that the intention of the testator was to exclude the husband from all interest in or control over the property to which the power of sale relates. Stevens, the vendee of Mrs. Harris, derived title to the lots in question, as part of the estate of Aaron Burns, under and by virtue of the power of sale, and not by virtue of any estate in Mrs. Harris herself. The only estate she had was for life; but the power of sale when executed, as it was by a regular deed of conveyance, vested in him the fee to the lots in controversy; and the plaintiffs in error, claiming under him, should have been permitted to show their title.

Judgment reversed and a *venire facias de novo* awarded.